# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 17-cr-318 (SRN/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Donte Carnell Robinson, | |
| Defendant. | |

Jeffrey S. Paulsen, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government.

Caitlinrose H. Fisher, David J. Wallace-Jackson, Jeffery Rotenberg, Peter H. Kyle, Virginia R. McCalmont, Greene Espel PLLP 222 S. Ninth Street Suite 2200, Minneapolis MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Donte Carnell Robinson's Motion for Release [Doc. No. 640] pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Robinson seeks compassionate release and requests that the Court reduce his prison sentence to home confinement because of the dangers posed by COVID-19. The Government filed a response in opposition to Mr. Robinson's Motion for Release. (Gov't Opp'n [Doc. No. 642].)

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motion.

1

# I.   BACKGROUND

## A.   Procedural and Factual Background

In March 2018, Mr. Robinson pleaded guilty to conspiracy to distribute cocaine and cocaine base ("crack") pursuant to a plea agreement (the "Plea Agmt" [Doc. No. 279].) Mr. Robinson's charges arose from a wiretap investigation of co-defendant Jimmie McGowan.  [Doc. No. 1.]  As noted in the Plea Agreement, Mr. Robinson was a cocaine and crack source of supply to Jimmie McGowan.  (Plea Agmt. ¶ 1.)  On August 14, 2018, the Court sentenced Robinson to a 71-month term of imprisonment.   [Doc. No. 449.]

Mr. Robinson is incarcerated at the Federal Correctional Institution ("FCI") in Elkton, Ohio.  He has a projected release date of August 26, 2023.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed July 30, 2020).

## B.   FCI-Elkton

FCI-Elkton has had difficulty containing the spread of COVID-19.  Earlier in the COVID-19 crisis, the Attorney General specifically highlighted FCI-Elkton as a facility facing "significant levels of infections" and directed the Bureau of Prisons ("BOP") to increase the use of home confinement for prisoners housed at FCI Elkton and other similarly situated facilities.  *See* William P. Barr, Attorney General, Memorandum for Director of Bureau Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. Currently, the BOP reports the facility as having the eighth highest level of inmate infections among BOP facilities, and among the top-five facilities with the highest level of

inmate deaths.  *See* COVID-19: Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 30, 2020).

Because of the extent of the outbreak, FCI-Elkton has been the subject of extensive habeas litigation in the United States District Court for the Northern District of Ohio. *Wilson v. Williams*, -- F. Supp. 3d --, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), *vacated*, 961 F.3d 829 (6th Cir. 2020).  Based on the threat posed by the virus, the district court identified a subclass of FCI-Elkton inmates who—due to age and/or certain medical conditions—were particularly vulnerable to complications, including death, if they contracted the virus, and granted certain preliminary injunctive relief, including requiring the BOP to evaluate the subclass members for compassionate release and transfer out of FCI-Elkton.  *Id.* at *6, 10-11.

Although that preliminary injunction has since been vacated, the Sixth Circuit validated the district court's finding that the combination of the (1) presence of the virus at the facility and (2) dormitory-style housing "present[ ] a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death."  *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020).  The Sixth Circuit instead lifted the preliminary injunction based on its finding that, despite this serious ongoing threat, prison officials had "responded reasonably to the risk" and were therefore not likely to be found to be deliberately indifferent in violation of the Eighth Amendment to the Constitution.  *Id.* at 841.

Moreover, while the number of infected inmates at FCI Elkton and the death toll are both far too high, "there is some evidence that the measures imposed by the BOP have limited further spread of the virus." *United States v. Montanez,* No. 15-cr-122, 2020 WL 4218007, at *3 (W.D.N.Y. July 23, 2020) (acknowledging "that the serious COVID-19 outbreak at FCI Elkton persists but noting that the facility has made progress in fighting the virus") (internal citation and quotation omitted)).  The inmates at FCI-Elkton who tragically lost their lives due to COVID-19 all passed before early May.  As of May 5, 2020, the BOP reported that there were 99 infected FCI Elkton inmates;(Gov't's Opp'n at 2), since then, the number of active COVID-19 cases among the FCI Elkton inmate population has decreased.  *See* COVID-19: Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 30, 2020).

### C.    Parties' Positions

Mr. Robinson initially filed a pro se motion for compassionate release on April 27, 2020. (("Def.'s Mot.") [Doc. No. 640].)  His counsel filed a Supplemental Memorandum in support of his pro se motion on June 2, 2020. (("Def.'s Suppl. Mem.") [Doc. No. 650].)  The Government filed a response to Mr. Robinson's pro se motion on May 6, 2020 (("Gov't's Opp'n") [Doc. No. 642]), and a response to the Supplemental Memorandum on July 9, 2020 (("Gov't's Suppl. Opp'n") [Doc. No. 680]).

Mr. Robinson was not identified by the BOP in *Wilson* as a member of the medically vulnerable subclass.  ([Doc. No. 680] at Ex. 1.)  Nonetheless, in his motion, he asserts that in light of the severe risks associated with the COVID-19 outbreak at FCI-Elkton and his medical conditions, he is eligible for release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Def.'s

4

Mot. at 1-5.)  He contends that the prison is providing inadequate protection to inmates and that his medical diagnoses place him at a greater risk should he contract COVID-19 according to the guidelines promulgated by the Centers for Disease Control and Prevention ("CDC"), (Def.'s Mot. at 1-4; Def.'s Suppl. Mem. at 1).  Specifically, he asserts that he has a history of asthma, respiratory infection, and hypertension.  (Def.'s Suppl. Mem. at 16-23.)  Mr. Robinson argues that these risks present "extraordinary and compelling" reasons to grant his request for compassionate release.  He also notes that his father is suffering from cancer.  (Def.'s Mot. at 5.)  Further, Mr. Robinson argues that compassionate release is consistent with the sentencing factors in 18 U.S.C. § 3553(a) because of the non-violent nature of his offense and his "unblemished disciplinary record" while incarcerated.  (*Id.* at 25-26.)

In opposition, the Government's argument is two-fold.  First, the Government asserts that Mr. Robinson has failed to demonstrate "extraordinary and compelling reasons" warranting compassionate release.[1]  (Gov't's Opp'n at 4–8.)  The Government argues that Mr. Robinson's medical documentation shows that his "asthma is mild and under control" and his blood pressure does not place him at a higher risk of COVID-19 complications.  (*Id.* at 8.)  In addition, the Government argues that, in light of the CDC's recent classification of asthma and hypertension as "possible," rather than known risk factors for COVID-19 infection, Mr. Robinson's motion fails to demonstrate extraordinary

---

[1]     The Government does not assert that Mr. Robinson has failed to exhaust his administrative remedies prior to seeking relief from the Court because he appears to have made a request for compassionate release to the Warden, which was denied on April 13, 2020.  (Def.'s Mot. at 5.)

and compelling reasons justifying release. ("Gov't Suppl. Opp'n at 4-5.)  Second, the Government contends that the Court has no authority to order the Bureau of Prisons ("BOP") to place Mr. Robinson in home confinement.[2]   (Gov't Opp'n at 9–10.) Moreover, the Government maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities.  (*Id.* at 2; *see also* Addendum [Doc. No. 642] at 11-15.)

## II.    DISCUSSION

### A.    The Law

A court may not modify a term of imprisonment once it has been imposed, except pursuant to statute.  *United States v. Kachina*, 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also McIndoo*, 2020 WL 2201970, at *2. The compassionate release provision, as amended by the First Step Act, is such a statutory exception.  18 U.S.C. § 3582(c)(1)(A).

The First Step Act[3] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first

---

[2]    The Government appears to misapprehend the nature of the relief requested by Mr. Robinson in making this argument. (*See* Def.'s Mot. at 6-7).  While the Court is not authorized to determine Defendant's place of incarceration or order the BOP to place Defendant on home confinement, "if the standard set forth at 18 U.S.C. § 3582(c)(1)(A) is satisfied, the Court is authorized to reduce Defendant's prison sentence to time served and impose home detention or incarceration as a condition of supervised release." *United States v. McIndoo*, -- F.Supp.3d --, 2020 WL 22091970, at *3 n.6 (W.D.N.Y. May 6, 2020).

[3]    The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

time, to petition district courts directly for compassionate release. *United States v. Stephenson*, 3:05-CR-00511, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. § 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition or family conditions, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id.* The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." *Id.* cmt. n.1(A).

As for family circumstances, the policy statement provides that a reduction is warranted by the "death or incapacitation of the caregiver" of defendant's "minor children" or the "incapacitation of the defendant's spouse or registered partner" when the defendant would be the only available caregiver for that spouse or partner. *Id.* cmt. n.1(C); *see United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600 (D. Minn. Apr. 28, 2020). The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories."[4] *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

---

[4]     Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, No. 17-10328-WGY, 2020 WL 2404858 (D. Mass. May 12, 2020) (collecting cases and finding that courts "have the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."). The Eighth Circuit has recently reinforced the district court's discretion to "expand the use of compassionate release" with the passage of the First Step Act. *United States v. Rodd,* No.

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, 13-cr-20653, 2020 WL 2557077 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019); (further citations omitted)).

Moreover, as the movant, the defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at *4 (D.N.D. May 19, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)); *see also United States v. Morrison*, 16 Cr. 551-1 (KPF),  2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is

_____

19-3498, 2020 WL 4006427, at *6 (8th Cir. July 16, 2020) (noting that it need not determine whether the district court erred in adhering to the Commission's policy statement because the district court "knew its discretion" to assume a more expansive definition of "extraordinary and compelling reasons" under the First Step Act) (internal quotation and citation omitted).

entitled to a sentence reduction.") (internal quotation and citation omitted); *United States v. Cabrera*, No. 10-cr-20016-JES-DGB, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted).

### B.    Analysis

The Court now considers whether release under these facts is warranted. As explained above, the Sentencing Commission's guidance provides that an inmate's medical condition alone can sometimes be sufficiently extraordinary and compelling under § 3582(c)(1)(A). U.S.S.G. § 1B1.13 cmt. 1(A)(i) (noting that the condition must be "serious and advanced with an end of life trajectory" or "substantially diminish the ability of the inmate to provide self-care" within the facility and be one "from which he or she is not expected to recover."). Alternatively, an inmate's serious medical condition "in combination with" additional factors may also justify compassionate release. *Id.* at cmt. n.1(A)-(D).

Mr. Robinson argues that the COVID-19 pandemic, in combination with his medical conditions, warrants compassionate release. Although the Court does not intend to diminish the risk of COVID-19 in the federal prison system, especially at FCI-Elkton, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Raia*, 954 F.3d 594, 957 (3d Cir. 2020) ("the mere

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *Ramirez*, 2020 WL 2404858, at *3; *Shamilov*, 2020 WL 2029600, at *3; *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases).

Against these standards, Mr. Robinson fails to present extraordinary and compelling reasons for his release. Mr. Robinson, who is 38 years old, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications. CDC*, Coronavirus Disease 2019: People Who Are At Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 30, 2020). Nonetheless, he asserts that he has several health conditions, including a history of asthma, pneumonia, and chronic hypertension, which make him more vulnerable to becoming seriously ill should he contract COVID-19. (Def.'s Suppl. Mem. at 3.)

The Court disagrees. First, while the documentation Mr. Robinson offers demonstrates that he has a history of pneumonia, hypertension, and asthma, it does not show that any of his asserted conditions are not sufficiently under control. (*See* Def.'s Ex. H at 3 ("BP is now normal."); Def.'s Ex. D at 2 (asthma medication prescribed in 2005); Def.'s Ex. F at 2 (hospitalization for pneumonia in 2010).) He was last hospitalized for his pneumonia in 2010, nearly ten years ago. As for his hypertension, his records suggest that

11

he had hypertension within the last year, but his condition was noted as "normal" in January 2020.  (Def.'s Ex. E at 2; Def.'s Ex. H at 3, 6.)  And, regarding his asthma, he was last prescribed medication in 2005 and the prescription was discontinued in 2007.  (Def.'s Ex. D. at 2.)  His medical records also appear to demonstrate that he requested, as of January 2020, to be designated "healthy" by the BOP.  (*See* Def.'s Ex. H at 3 (medical record reflecting that, as of January 2020, Mr. Robinson is "requesting to be care level 1. Has no complaints. Reports no chest pain."); (Gov't's Suppl. Resp. at 3) (explaining that Care Level 1 is the BOP designation for "healthy prisoners") (citing Bureau of Prisons, *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, May 2019 at 2-3, https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf, (last accessed July 30, 2020)).

Mr. Robinson, however, challenges the Court's reliance on his admittedly sparse medical documentation in assessing his susceptibility to the virus.  (Def.'s Suppl. Mem. at 17 n.24, 24-25).  Relying heavily on *United States v. Alvarado*, No. 18-cr-283 (NEB/TNL), 2020 WL 3041504 (D. Minn. May 27, 2020), he urges the Court to recognize his asthma as an increased risk for complications should he contract COVID-19.

The Court finds *Alvarado* distinguishable from this case.  In *Alvarado*, the inmate was granted compassionate release, in part, because he was "prescribed an inhaler" for his asthma "to be used every four hours as needed for coughing, wheezing, or shortness of breath."  *Id*. at *2.  Unlike *Alvarado*, here, there is no documentation nor affidavit from Mr. Robinson qualitatively describing any symptoms from his asthma, such as "coughing, wheezing, or shortness of breath."  *Id*.  In fact, his medical records indicate that his

prescription was discontinued thirteen years ago, with no specific explanation nor basis. Thus, the Court is unable to find that Mr. Robinson is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his asthma. *See United States v. Miller*, No. 12-cr-00133 (SEB/TAB), 2020 WL 4192895, at *4 (S.D. Ind. July 21, 2020) (denying compassionate release where 41-year-old inmate's asthma was well-controlled); *United States v. Edison*, No. 12-cr-225 (DWF), 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (denying compassionate release where inmate's documentation showed that he had a history of, but did not currently suffer from, hypertension); *United States v. Hopkins*, No. 11-cr-230(1) (DWF), 2020 WL 3839839, at *3 (D. Minn. July 8, 2020) (denying compassionate release to inmate where medical documentation showed that inmate did not currently suffer from underlying conditions); *United States v. Miland*, No. 16-cr-0159 (WMW/SER), 2020 WL 3249259, at *4 (D. Minn. June 16, 2020) (denying compassionate release where inmate provided no medical documentation); *United States v. Wilson*, No. 7-cr-132 (MCR), 2020 WL 4193624, at *2 (M.D. Fla. July 21, 2020) (denying compassionate release to otherwise healthy 43-year-old inmate with high blood pressure and asthma not alleged to be moderate or severe).

Further, although high blood pressure is listed by the CDC as an aggravating condition that "might" increase the risk for severe illness from COVID-19,[5] Mr. Robinson

---

[5]     The Government notes that, since Mr. Robinson's counsel filed a supplemental memorandum, the CDC has re-categorized "moderate-to-severe asthma and hypertension" as possible, rather than definite risk factors for severe illness from COVID-19. Nonetheless, it appears district courts continue to recognize both conditions as a "medical condition that could present an 'extraordinary and compelling' reason" justifying compassionate release." *United States v. Lassiter*, No. 17-cr-232, 2020 WL 3639988, at

again offers no evidence that his blood pressure is not under control. In fact, a review of his BOP medical records indicates that his blood pressure readings have decreased with treatment. (*See* Def.'s Ex. H at 3.) And, as the Government notes, while Mr. Robinson had higher blood pressure readings last year, after modifying his diet and exercise habits, his most recent reading appears to only be "slightly above normal" as of January 2020. (Gov't Opp'n at 8; *see also* Gov't's Suppl. Opp'n at 5.) Thus, the Court is unable to find that Mr. Robinson is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his blood pressure.

As for whether Mr. Robinson has a heightened risk of contracting the virus based on the conditions of the facility, the Government expressly acknowledges that he is being held at a facility where an outbreak has occurred. (*Id.* at 2.) Nonetheless, as this Court found in *United States v. Brik*, No. 15-cr-78 (SRN/BRT), 2020 WL 3531576, at *7 (D. Minn. June 30, 2020), and other courts have found, this risk alone is insufficient to automatically warrant compassionate release. *See*, *e.g.*, *United States v. Abram*, No. 15-cr-20656, 2020 WL 3097259 (E.D. Mich. June 11, 2020) (denying compassionate release for Elkton inmate with diagnosed asthma that is well-controlled with an inhaler); *United States v. Council*, No. 14-cr-14 (TLS/SLC), 2020 WL 3097461 (N.D. Ind. June 11, 2020) (denying compassionate release for 49-year-old Elkton inmate because, in part, his

---

*5 (D. Md. July 6, 2020) (acknowledging the CDC's recategorization of risk factors but concluding that hypertension is "a medical condition that could present an 'extraordinary and compelling' reason" justifying compassionate release); *United States v. Croft*, No. 95-cr-496-1, 2020 WL 3871313, at *3 (E.D. Pa. July 9, 2020) (granting compassionate release to an inmate with hypertension and chronic lung disease even after the CDC recategorized the conditions "as possibly increasing the risk" of severe illness from COVID-19).

diagnosed conditions, like sleep apnea, asthma, hypothyroidism, and obesity did not justify reduction of his sentence); *United States v. Speed*, No. 14-cr-20056, 2020 WL 2992188 (C.D. Ill. June 4, 2020) (denying compassionate release for Elkton inmate with hypertension and body mass index of 31.2); *United States v. Morrison*, No. 06-cr-20099 (JWL), 2020 WL 2735749 (D. Kan. May 26, 2020) (denying compassionate release for 56-year-old Elkton inmate with no known health risk factors, and was similarly not identified as a member of the *Wilson* medically vulnerable subclass); *United States v. Bowen*, No. 11-cr-30059, 2020 WL 2521514 (C.D. Ill. May 18, 2020) (denying compassionate release for 61-year old Elkton inmate with no present health risk factors under CDC guidelines); *United States v. Lebrecht*, No. 16-cr-00166, 2020 WL 2519721 (W.D.N.Y. May 18, 2020) (denying compassionate release for Elkton inmate with no known health risk factors); *United States v. Murphy*, No. 15-cr-20411, 2020 WL 2507619 (E.D. Mich. May 15, 2020) (denying compassionate release for Elkton inmate with diagnosed asthma controlled by inhaler use); *United States v. Peaks*, No. 16-cr-20460, 2020 WL 2214231 (E.D. Mich. May 7, 2020) (denying compassionate release for 31-year-old Elkton inmate with relatively high body mass index of 44 and hypertension).

        In sum, the Court finds that Defendant's medical conditions and family circumstances do not warrant compassionate release.  Mr. Robinson has not contracted the virus, and his medical conditions, in light of his relatively young age and access to medication, do not fall in the category of illnesses with an end-of-life trajectory, or other reasons, under the Guidelines.   A reduction in sentence would not be consistent with the policy statements issued by the Sentencing Commission.  The Court further finds that no

other compelling circumstances support his request for a reduction in sentence. [6]   In fashioning an appropriate sentence, the Court applied the § 3553 factors to Mr. Robinson. While Mr. Robinson's participation in a series of educational courses is encouraging, he has only served 21 months of his 71-month sentence.  Reducing his sentence by nearly two-thirds would not "promote respect for the law, provide just punishment, afford adequate deterrence, []protect the public from further crimes" nor "reflect the seriousness of his offense." *United States v. Zigler*, No. 11-cr-304 (SRN/JSM), 2020 U.S. Dist. LEXIS 112384, at *18 (D. Minn. June 26, 2020) (citing 18 U.S.C § 3553(a) (further citation omitted)).

Taking into consideration all of the Section 3553(a) factors, the Court continues to find that a sentence of 71 months is just and fair under the totality of the circumstances. *See*, *e.g.*, *United States v. Rodd,* No. 19-3498, 2020 WL 4006427, at *7 (8th Cir. July 16, 2020) (finding that the district court did not abuse its discretion in denying a compassionate release motion when lower court noted its consideration of the § 3553(a) factors at sentencing).  While the Court understands Mr. Robinson's concerns about his health and safety, his Motion for Release is denied for all of the reasons stated above.

---

[6]     Regarding his family circumstances, while the Court is sympathetic to Mr. Robinson's father's diagnosis of cancer (Def.'s Mot. at 5 ¶ 18), his request does not fall within the Guidelines' policy statement.  He does not seek release because he is the only available person to care for a minor child or spouse.  *See* U.S.S.G. § 1B1.13, Cmt. 1(C).

### III.    ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant's Pro Se Motion for Release [Doc. No. 640] is **DENIED.**

Dated:    August 4, 2020                          s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge